FIRST NATIONAL BANK OF CORNING V. T. C. REID et al., ROCK ISLAND PLOW COMPANY, Appellant, AND T. C. REID et al., GALE MANUFACTURING COMPANY, Appellant, v. T. O, REID et al.

**Withholding Mortgage from Record.** FRAUD.    Merely withholding a mortgage from record will not render it fraudulent as to a subsequent mortgagee, in the absence of a showing that credit was extended during the time so withheld without knowledge of the prior mortgage.

**Estoppel.** Where one accepts and relies on a mortgage, which, by its terms is subject to one previously executed and recorded, he is estopped from asserting the invalidity of the prior mortgage because withheld from record.

**Statement of Amount Secured:** NOTICE.    A mortgage given to secure a stated amount, "renewals, advances now or to be made by note or otherwise" is insufficiently specific to put a subsequent mortgagee, with notice, on inquiry to ascertain the exact amount due thereunder.

**Evidence:** ELECTION.    Evidence considered and held not to show an intention to rely on a mortgage covering property conditionally sold to the exclusion of mortgagee's rights under the conditional sale.

**Conditional Sale:** WAIVER.    Mere acceptance of a mortgage, covering goods conditionally sold, will not operate as an election by the mortgagee to waive his rights under the contract of sale in favor of another mortgage given to secure a debt contracted prior to the sale.

**Lost Files:** SUBSTITUTION.    The granting of an order to substitute lost files is discretionary with the court, and after a case has gone to judgment on a rehearing, denial of the right to substitute a lost deposition on the ground of laches is not error.

*Appeal from Adams District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, JANUARY 20, 1904.

PRIOR to July 1, 1893, the defendant Reid was engaged in the agricultural implement business in Corning, Iowa. On the 1st day of November, 1892, Reid and the Rock Island Plow Company entered into a written contract by the terms of which the plow company sold to Reid fifty hay loaders, at $50 each, to be delivered in 1893. It was stipulated in the contract that the ownership of the hay loaders should remain in the plow company until they were paid for. Fifteen hay loaders were shipped to Reid on the 14th, and thirty-five on the 24th, of March, 1893. On the latter date, Reid gave the first National Bank of Corning his note for $1,000 due in thirty days, and secured the same by chattel mortgage on certain personal property then in his possession. This mortgage was recorded on the 10th of June, 1893. On the 10th of June, 1893, Reid gave the Corning State Savings Bank a chattel mortgage on the hay loaders sold to him by the plow company, and on other personal property, to secure pre-existing indebtedness. This mortgage was recorded on the 19th of June. On the 20th of June, Reid executed and delivered to the plow company, through its attorneys, a chattel mortgage on his "stock of machinery, implements, fixtures, and furniture" connected with his "implement business in Corning, Iowa, of every kind and description, which belongs to me and is my property." This mortgage recites that it was given to secure $3,000 due on "book account, as per written contract, for goods heretofore purchased of said company on or before November first, 1892, and it is subject to mortgage or liens heretofore filed of record hereon." June 28, 1893, the plow company commenced an action of replevin against Reid for the hay loaders sold to him. A writ was issued, and all of the loaders which were found were taken possession of thereunder by the sheriff. Afterwards, on the same day, the chattel mortgage given to the plow company by Reid was placed in

the hands of the sheriff for foreclosure. The mortgage to
the savings bank was also given him for the same purpose
at the same time, and he took possession of the remainder
of Reid's stock. On the 30th of June, 1893, the First
National Bank filed its petition in equity, praying a fore-
closure of its mortgage and making the other mortgagees
defendants. Thereafter the Corning State Savings Bank
and the plow company filed answers and cross-petitions,
asking the foreclosure of their respective mortgages, the
plow company alleging that the plaintiff's mortgage was
fraudulent, and the Gale Manufacturing Company inter-
vened, setting up its claim, and alleging that the mortgages
to the two banks were fraudulent. A receiver was appointed
in June, 1893, who took possession of all property in-
volved, and has converted it into money. At the Janu-
ary, 1894, term of the district court, these various
interests were tried and submitted together as an equity
case, and upon the same record, and by agreement, the
judgment therein was to be entered in vacation. After
this submission, but just when does not appear, a part of
the papers filed in the case, together with some of the
depositions, were lost. On the 20th of October, 1898,
four years and ten months after the original submission,
the following docket entry in the case was made by the
court: "By agreement of counsel, this and all other cases
submitted with it are to be resubmitted in vacation on
account of lost papers, and the reporter is directed to
make a new transcript of the evidence." January 12,
1900, a written stipulation was filed reciting the loss of
the papers, and stating that "at a former term, upon the
suggestion and agreement of counsel in open court, an or-
der was made for the substitution of all lost papers," and
stipulating for a resubmission upon the filing of designated
substituted pleadings and briefs and the new transcript of
the evidence. These were filed, and the case was resub-
mitted and finally determined in January, 1901, by a

judgment establishing the mortgage of the First National
Bank as a first lien upon the property it covered, and the
mortgage of the savings bank as a first lien upon the hay
loaders and a second lien upon the rest of the property as
against the plow company, and dismissing the latter's
replevin action.   From this judgment the plow company
an1 the Gale Manufacturing Company appealed in due
time, and thereafter, in January, 1903, the Gale Manu-
facturing Company, by proper motion in the district
court, asked leave to substitute the depositions of G. W.
Bartles and C. E. Giles, which were in evidence upon the
original submission of the case, and were lost and not
theretofore substituted.   This motion was heard in May,
1903, and denied, and from that order the Gale Manufact-
uring Company appeals.   The appeals are submitted to-
gether. —*Modified* and *affirmed*.

*Maxwell & Maxwell* and *Flickinger Bros.* for
appellants.

.   *Davis & Wells* and *Burg Brown* for appellees.

SHERWIN, J.—No question as to the hay loaders is
involved in the controversy between the First National
Bank and the plow company.   The plow company con-
tends that the mortgage to this bank was
fraudulent because it was withheld from the
record, and, because thereof, that its mort-
gage on the general stock is entitled to priority.   The
mere withholding of the mortgage from record, however,
would not be fraudulent, and to make it so as to the plow
company it was necessary to prove that, during the time
it was so withheld, the plow company extended credit to
Reid without knowledge of the mortgage.   *Goll & Frank
Co. v. Miller,* 87 Iowa, 426; *Garner v. Fry,* 104 Iowa, 515.

When the Plow Company took the mortgage from
Reid the bank mortgage ·was recorded, and, in addition

I. WITHHOLD-
ING mortgage
from record.
fraud.

to the constructive notice which the record furnished, the plow company had actual notice of its exact terms and conditions. Futhermore, within three or four days thereafter, and before action was brought to recover the hay loaders, the plow company sent two of its agents to Corning to investigate the financial condition of Mr. Reid. This they did with care, and were then fully advised as to the preceding mortgage transactions. The mortgage from Reid to the plow company was an entire contract. It expressly provided that the rights of the company thereunder were subject to the mortgages on the same property then of record. If the company, when it became fully advised of the transaction between the bank and Reid, had repudiated its mortgage, it might be in a position to press its claim as to the fraudulent character of the bank's mortgage. But instead of repudiation, it is now and has all along been relying thereon for the superiority of its lien on the property in question. This position cannot be consistently maintained. It accepted the mortgage with a condition which the mortgagor had a right to impose for the protection of his other mortgages and for his own protection, and, having accepted the mortgage subject to the lien of the bank's mortgage, it is bound thereby, and cannot now question the validity of that mortgage, any more than the mortgagor could. *Key v. National Life Insurance Co.*, 107 Iowa, 446; *Van Buren County Saving Bank v. Woolen Mills Co.*, (Iowa), 91 N. W. Rep. 945; *Gammon v. Bull*, 86 Iowa, 754; *Ellis v. Lamme*, 42 Mo. 153; *Griether v. Alexander*, 15 Iowa, 470; *Perrine v. First National Bank*, 55 N. J. Law, 402 (27 Atl. Rep. 640); *Tolbert v. Horton*, 31 Minn. 518 (18 N. W. Rep. 647); *Howard v. Chase*, 104 Mass. 249; 2 Cobbey, Chattel Mortgages, 31,039.

The First National Bank's mortgage was given to secure the $1,000 note therein described, and all renewals or extensions of the same, and all other advances of

2. ESTOPPEL.

money by the bank to Reid, "now made or to be hereafter made, by note or otherwise." This was sufficiently specific to put the plow company upon inquiry, and to enable it to ascertain the exact amount of indebtedness secured thereby. *Magirl v. Magirl*, 89 Iowa, 342. Reid's mortgage to the savings bank covered the hay loaders as well as other property, and the plow company's mortgage was also subject thereto; so that as between these parties, so far as the latter's rights are predicated upon its mortgage, what we have already said disposes of the matter. It is contended, however, that the company should have been awarded the hay loaders taken on the writ of replevin because of the reserve clause in the contract of sale; and on the other side it is said that it abandoned its rights under that contract, and elected to rely upon its mortgage; and, further, that the contract was void as to the bank because of the credit extended by it to Reid at the time its mortgage was taken.

The trial court found that an election had been made by the company to hold under its mortgage. With this finding, however, we do not agree. It will be remembered that the mortgage does not specifically refer to the hay loaders, though it was doubtless given to secure the amount due for them in connection with the other indebtedness. But when the company learned the true situation of Reid's affairs, it began the replevin action and took possession of the loaders then on hand, and this was before it took any action toward the foreclosure of its mortgage. This act of itself negatives the idea of an election at that time, and ever since then the company has been insisting upon its right to these hay loaders under the contract of sale. It is true that it has also been claiming under its mortgage, but the two claims are not absolutely inconsistent because of the fact that there was a large amount due it which was secured by the mortgage

after the hay loaders were replevined. We do not think there was such an election in this case as to estop the plow company, under the rule announced in *Kearney & Co. v. U. P. Ry.*, 97 Iowa, 719.

Nor do we think the acceptance of the mortgage alone operated as an election. Under the contract, Reid had the right to dispose of the loaders in the usual course of trade, and had at the time the mortgage was executed so disposed of many of them, and

5. CONDITIONAL sale: waiver.

there is no evidence tending to show that at the time the mortgage was taken the plow company knew how many of the loaders were then in the possession of Reid. See *Deere v. Morgan*, Sheriff, 114 Iowa, 287; 6 Am. & Eng. Enc. of Law, 478; *Montgomery Iron Works v. Smith*, 98 Ala. 644 (13 South. Rep. 525). The trial court found that the savings bank mortgage was to secure an antecedent debt, and that it was not therefore entitled to protection against the contract of sale, and this view we think is supported by the record. Our conclusion on this branch of the case is that the plow company is entitled to the hay loaders taken on the writ, or to their proceeds in the hands of the receiver, and the decree is modified in this particular.

The question remaining is between the Gale Manufacturing Company and the First National Bank, and we will first dispose of the appeal from the order refusing the substitution of the depositions. It ap-

6. LOST files: substitution.

pears that they, with other files in the case, were lost at least some time before 1898, and that all concerned in the case were aware of that fact, or at least of the fact that one of the depositions was lost. There was a stipulation in open court in October, 1898, which will be presumed to have been participated in by counsel for all parties, that the case be resubmitted on account of the loss of the files. Again, in January, 1900, a written stipulation for a resubmission and substitution was signed by

attorneys who now appear for the manufacturing company, and who are not shown to have had no connection with the case at that time. These various steps in the case seem to have been taken before the judge who heard the case originally and who made the ruling here appealed from. An order of substitution is not a matter of absolute right, but rests in the sound discretion of the court. *Tomlinson v. Funston*, 1 G. Greene, 544; *Gammon v. Knudson*, 46 Iowa, 457. Not until long after the judgment on the resubmission, and after an appeal to this court, was there any effort made to substitute these depositions, and we think the court rightly held the manufacturing company estopped by its laches. That these depositions were not before the court when the case was finally considered and determined is clear. There was then no evidence before the court, nor is there now any showing that the Gale Company had extended credit to Reid while the bank's mortgage was withheld from record, and it was not in any event entitled to protection as against that mortgage. In this view of the case it is unnecessary to determine whether the Gale Company took the steps requisite to sustain its claim.

With the modifications heretofore made, the judgment and the order are affirmed.—MODIFIED and AFFIRMED.