### A. M. ALDEN v. W. J. DYER & BROTHER.[1]

May 13, 1904.

Nos. 13,784—(26).

**Conditional Sale.**

Where personal property is sold and delivered upon condition that the title shall remain in the vendor until the payment of the purchase price, and the latter elects to bring suit for the recovery of the debt, the adoption of this course is a waiver of the condition in the agreement of sale. Keystone Mnfg. Co. v. Cassellius, 74 Minn. 115, followed.

**Collection of Price by Suit.**

A note to which was attached the condition that the ownership of the property for which it was given should remain in the vendor upon default of payment was sent to an attorney in another state, who brought action to recover the debt and secured judgment thereon. *Held:*

1. That the sending of the note and conditional agreement to the attorney presumably authorized the latter to use all lawful means to collect the debt within his judgment and discretion.

2. That, in the absence of restrictions other than that the property be taken, the bringing of the suit was within the apparent authority of the attorney, and his client must be held responsible for his acts and the liabilities imposed thereby.

3. That the bringing of the suit under the facts in this case relieved the property from the conditions in the agreement of sale.

Action in the district court for Ramsey county to recover $450 for conversion of a piano. From a judgment entered pursuant to an order, Bunn, J., in favor of plaintiff for $373.92, notwithstanding a verdict in favor of defendant, defendant appealed. Affirmed.

*Franklin H. Griggs,* for appellant.

*Geo. D. Emery,* for respondent.

If the sale was conditional, then the bringing of the suit on the note, for money only, was an act of election by appellant, which recognizes title in respondent and the seizure and conversion of the piano was wrongful. Minneapolis Harvester Works v. Hally, 27 Minn. 495; C. Aultman & Co. v. Olson, 43 Minn. 409; Keystone Mnfg. Co. v. Cas-

[1] Reported in 99 N. W. 784.

sellius, 74 Minn. 115; Hewison v. Ricketts, 10 Rep. 558; Thomason v.
Lewis, 103 Ala. 426; McRea v. Merrifield, 48 Ark. 160; Parke v.
White, 101 Cal. 37; Holt v. Ewing, 109 Cal. 353; Crompton v. Beach,
62 Conn. 25; Button v. Trader, 75 Mich. 295; Seanor v. McLaughlin,
165 Pa. St. 150; Parlin v. Harrell, 8 Tex. Civ. App. 368; Parlin v.
Moline (Tex.) 27 S. W. 1087.

LOVELY, J.

This action is to recover for an alleged wrongful conversion of a
piano by the defendant corporation. At the trial there was a verdict
for defendant. Upon the alternative motion for judgment or a new
trial the court ordered judgment for plaintiff for the value of the prop-
erty as admitted, which was entered. Defendant appeals.

Plaintiff purchased a piano of defendant for $435, and applied thereon
an old piano, valued at $100, made a cash payment of $50, and gave
a note for the unpaid balance ($285) of the purchase price. Attached
to this note under the claim of defendant was a "title clause," signed
by plaintiff, containing stipulations to the effect that the ownership of
the property should not pass until the note was paid, and in the event
of its nonpayment at the appointed time, or on its sale or removal with-
out permission of defendant, the latter should have power to take pos-
session of the instrument wherever found, and sell the same at public
or private sale, the proceeds thereof to be applied to satisfy, first, the
costs of such taking and sale; second, the amount on the note then un-
paid; the remainder, if any, to be refunded to the subscriber.

The note, at maturity, was not paid. There were two subsequent re-
newals, the last of which became due on April 15, 1895. To each of
the renewals was attached a condition of substantially the same char-
acter as that above referred to. It was an issue of fact at the trial
whether the title clause attached to the first note had been erased by
agreement of the parties before delivery; and, while it is apparent that
the trial court considered this question of controlling importance, after
a thorough examination of the entire evidence we are inclined to up-
hold the order for judgment upon what we regard as more satisfactory
grounds. For the purposes of this case it may be conceded that de-
fendant's claim that the title clause was not erased is established, and
remained in the first note; but in February, 1895, plaintiff, with his

family, removed to Eugene, Oregon, where he located, taking the piano with him.

Defendant, to obtain payment of the last renewal, placed it in the hands of the R. G. Dun & Co. Collecting Agency, by whom it was sent to one Dorris, a lawyer at Eugene, who commenced an action to collect the amount due thereon. The complaint in the Oregon suit was for the recovery of money solely. In compliance with the laws of Oregon, it was filed in the office of the clerk of the court having jurisdiction of the cause, and the summons issued by that officer according to the proper procedure there. The attorney then placed it in the hands of a deputy sheriff, who served it upon a member of plaintiff's family, and thereafter, by the order of the attorney, took the piano under the title clause, which was not the authorized course to replevin the property. The proceedings in that suit were conducted to judgment, which was obtained for the unpaid amount of the note and costs. In the meantime the piano was shipped to St. Paul, and sold by the defendant, who applied the proceeds on the debt.

It was insisted for plaintiff at the trial and in this court that by this course there was a waiver of the conditions as to the retention of ownership by defendant, and that in bringing suit for the debt the plaintiff was relieved from the lien of defendant on the instrument under the title clause referred to. It must now be regarded as the settled law of this state, as well as of most others, that, where personal property is sold and delivered with an agreement that the title thereto shall remain in the vendor until the payment of the purchase price, it is a conditional sale, and the transaction cannot be held a mortgage; and it is equally as well settled that, upon the vendee's failure to comply with the condition as to payment, the vendor may elect to retake the property, or may treat the sale as absolute, and bring an action for the price, but the assertion of either right is an abandonment or waiver of the other. Minneapolis H. W. v. Hally, 27 Minn. 495, 8 N. W. 597; C. Aultman & Co. v. Olson, 43 Minn. 409, 45 N. W. 852; Keystone Mnfg. Co. v. Cassellius, 74 Minn. 115, 76 N. W. 1028.

From the record it appears that the collection agent of the defendant (Wingate) took the note to the Dun Collection Agency at St. Paul, placed it in its hands, with directions to take the piano, admittedly to collect the debt, which was past due. Wingate stated at the trial that

he had no expectation that it would be paid, and the full extent of his direction is embraced in the following extract from his testimony:

> The piano had been taken away from here, and was now in Oregon. * * * We wanted him [the representative of the Dun Agency] to take this note, and get the piano, and return it to us in the quickest possible time.

The record of the Oregon suit and judgment was received in evidence, and appears to have been rendered in a court of general authority, containing recitals that disclosed jurisdiction of the subject-matter and of the person in an action for the recovery of money only, with such other averments as would entitle it to faith and credit in a sister state upon proper authentication. The defendant attempted to meet its effect by evidence tending to show that the commencement of the suit was unauthorized, claiming that the instructions given to the Dun Agency when the note was delivered to it by Wingate did not justify the course adopted by the attorney who acted for defendant.

It was admitted by the representative of the defendant, who put in motion the efforts for the collection of the note, that he was aware that the Dun Agency would not itself go to Oregon, and understood that it might be required to employ attorneys. The necessity of such a course would be obvious without such admissions, and it cannot be doubted that the employment of an attorney was within the authority conferred, and must be inferred.

The specific instructions given to the attorney did not appear, and must necessarily rest upon the presumptions that are involved in the relation between attorney and client. An inquiry into such relations is protected, they could not be inquired into by the plaintiff, and defendant, having the knowledge that an attorney might be employed, must be held to have authorized it, and relied upon the fact that the course he was to pursue was usual, and required the exercise of his judgment and discretion. No other restrictions were imposed either in the directions to the Dun Agency or the employment of Dorris. It is not claimed that the agency was to adopt any particular course, nor can it be implied that the attorney would not have been justified in commencing a suit of the character he did. The defendant, through its representatives, in setting in motion the proceedings that culminated

in the judgment, at least authorized the agency to adopt customary and legal means to collect the debt by taking the piano. Whether it was to be taken in an action of replevin to enforce the conditional clause, or upon execution after a judgment to be obtained (the property being exempt), or whether the right to sue on the note was to be waived and the conditional clause alone enforced, did not appear. Any of these means might have been adopted, and by the employment of the attorney, to whom the note was properly sent, either course would have been within the scope of his employment so far as any expressed limitation thereupon was made to appear. The fact that it was understood by defendant that a member of the legal profession might be employed at Eugene contemplated that he was to adopt the means he did, and the attorney might well have so understood the scope of his employment, his apparent authority upon this showing being that he was to exercise his best judgment in that respect; and the fact that, in the light of subsequent events, his course did not turn out for the best interests of his client, is not an unusual incident of litigation. The attorney did take the piano, and sent it to his client, who received it. In doing so he first commenced a suit of a certain character involving obligations which bound his client, who received the benefit of his efforts. Under the evidence showing that the defendant received the advantages derived from its attorney's efforts, defendant will not be permitted to repudiate the liabilities it incurred.

Whether the record of the foreign judgment can be attacked collaterally, as here, we are not required to decide, for it is enough to say that a strong presumption, partaking of the character of the high order of proof which the judgment furnishes, must be indulged in favor of whatever appears in the record essential to its validity. Full faith and credit must be given to the same, which is but an apparent necessity in the administration of the law in this country, and such presumptions should not be overcome by a critical examination into the confidential relations between the person who employs the attorney to render services in securing the judgment in behalf of his client, when, without the violation of an express restriction, such attorney does not choose to adopt methods which his client approves, but did not prohibit. Neither the well-understood relation between principal and agent, the principles

of sound public policy, nor the respect due records of judicial tribunals of sister courts will admit of such a course.

We are therefore required to hold that the order of the trial court was right upon the grounds stated, and that the judgment must be affirmed.