[No. 9728.   Department One.   November 17, 1911.]

WINTON MOTOR CARRIAGE COMPANY, *Appellant*, v.
BROADWAY AUTOMOBILE COMPANY, *Respondent*.[1]

SALES — CONDITIONAL SALES — REMEDIES OF SELLER — ELECTION— TRANSFER OF NOTE FOR BALANCE DUE—EFFECT.   Where, upon the conditional sale of an automobile, the seller takes a contemporaneous promissory note for the balance due, which does not refer to the contract or sale, and indorses the note to a bank as collateral security for a loan, he thereby makes an irrevocable election to waive the conditions of the sale, which results in passing absolute title to the automobile to the purchaser, and no title passes to the bank; and the subsequent taking up of the note does not alter the rights of the parties or entitle the seller to retake the automobile for condition broken.

Appeal from a judgment of the superior court for King county, Main, J., entered March 20, 1911, upon findings

[1]Reported in 118 Pac. 817.

in favor of the defendant, after a trial on the merits before the court without a jury, in an action to recover possession of property held under a writ of attachment.   Affirmed.

*Roberts, Battle, Hulbert & Tennant* and *C. J. France,* for appellant.

*Hughes, McMicken, Dovell & Ramsey* and *Frank P. Helsell,* for respondent.

PARKER, J.—This action was prosecuted by the plaintiff in the superior court for King county, under Rem. & Bal. Code, §§ 573-577, to establish its title and right of possession to an automobile, levied upon and held by the sheriff of King county as the property of J. R. Burch, under an attachment and execution issued out of that court in an action wherein the defendant herein was plaintiff and J. R. Burch was defendant.   We think the facts upon which the respective rights of the parties rest are shown by this record beyond controversy to be in substance as follows:   On August 24, 1908, the plaintiff delivered to Burch an automobile under a conditional sale contract which, in so far as we need to notice its terms, provides:

"This agreement witnesseth, that the Winton Motor Carriage Company, a corporation, party of the first part, has this 24th day of August, 1908, delivered to J. R. Burch, party of the second part, at 1305 Western Ave., Seattle, Washington, the following described personal property, to wit:   One second-hand Winton automobile Model M No. 6723,

"For which the second party agrees to pay the sum of two thousand dollars, eleven hundred dollars upon the delivery of said goods and chattels, receipt whereof is hereby acknowledged, and the further sum of nine hundred dollars in three months at the rate of 8 per cent per annum from date until paid.

"It is further agreed that said goods and chattels shall remain absolutely the property of said Winton Motor Carriage Company until said sum of nine hundred dollars, with interest thereon, is paid in full. . . .

"It is agreed and understood that time is the essence of this contract, and if any said payment remain unpaid after the same shall become due, or if any of the above conditions be violated, said first party, its agents or assigns, may enter upon the premises where said property is stored and retake possession thereof, without previous demand, and retain all installments paid and terminate this contract."

This contract was not filed under Rem. & Bal. Code, § 3670. At the same time, Burch executed and delivered to the plaintiff his promissory note for $900, payable three months after date, with interest at 8 per cent per annum. This note, it is conceded, represented the balance of the purchase price, and, it will be noticed was for the same amount, the same time, and the same rate of interest as stated in the contract. It was an entirely separate instrument from the contract of sale, and there was nothing in that contract indicating any purpose by the parties thereto of having this balance of the purchase price further evidenced in this manner. Soon thereafter the plaintiff indorsed this note and placed it in the hands of the First National Bank of Seattle as collateral security for a loan which that bank made to the plaintiff. Thereafter, on November 21, 1908, this note being then about to mature, an extension of time of payment was granted, both Burch and the bank consenting thereto, and in pursuance thereof, a new note was executed by Burch payable direct to, and left with, the bank as collateral in lieu of the first note. This second note was indorsed by the plaintiff, and made payable February 21, 1909. A short time after the execution of this note, Burch absconded, leaving many unpaid obligations.

At and prior to the time that Burch absconded, the automobile was kept by him at plaintiff's garage, but his possession thereof under the contract was in no manner interfered with or questioned prior to that time. Soon thereafter, the plaintiff took up the second note from the bank, and also took possession of the automobile, continuing in possession thereof until it was levied upon and taken from

his possession by the sheriff on January 4, 1909, under a writ of attachment issued out of the superior court in an action commenced therein by the defendant against Burch to recover a debt existing prior to the date of the conditional sale contract. Judgment being rendered in that case in favor of the defendant against Burch, and execution having issued thereon to the sheriff for the sale of the automobile, on February 26, 1909, the plaintiff commenced this action by filing an affidavit with the sheriff under Rem. & Bal. Code, § 573, claiming ownership of the automobile. This claim is based upon the plaintiff's rights under the conditional sale contract. Upon issues raised by the defendant's answer to the plaintiff's affidavit, a trial was had, resulting in findings and judgment in favor of the defendant, from which the plaintiff has appealed.

Did the acts of appellant in taking from Burch the $900 note representing the balance of the purchase price of the automobile, and thereafter endorsing that note over to the bank as collateral security for the loan, constitute in law an election by appellant to make the sale absolute, and thereby vest the title to the automobile in Burch? The correct answer to this question we regard as by far the most important factor to be considered in determining this controversy. It is apparently conceded by counsel for both parties that, under a conditional sale contract and a contemporary promissory note representing the unpaid purchase price, such as are here involved, the seller has a choice of two remedies; to wit: He may disaffirm the sale and retake the property upon failure of the conditions which it is agreed will vest title in the purchaser, or he may, by some act clearly manifesting his intention so to do, elect to treat and rely upon the unpaid purchase price as an absolute debt due from the purchaser. It is a general rule that the seller cannot have both remedies, and that when he has elected to avail himself of one, he has thereby divested himself of all right to the other. Whatever exceptions there be to this rule, a reference to the au-

thorities will show that such exceptions occur for the most part in jurisdictions where the law regards such contracts of sale only as security for the payment of the debt, in the nature of a lien, or where the contract by its terms evidences an intention to create a lien upon the property as security for the debt. The title, which is by this contract reserved in the seller, is the absolute title, under which he may retake the property, if at all, and retain it without any obligation whatever to account therefor, or for any surplus of the value thereof above the unpaid purchase price, to the purchaser. The thing which our law recognizes as being retained by the seller under this contract is not a mere lien or equity securing the balance of the purchase price, but the absolute title, which remains in him or passes from him to the purchaser absolutely, accordingly as the conditions of the sale are broken, or as they are fulfilled, or as may result from some act of election on the part of the seller. The nature of this title is clearly stated by the supreme court of Connecticut in *Crompton v. Beach*, 62 Conn. 25, 25 Atl. 446, 36 Am. St. 323, 18 L. R. A. 187, as follows:

"A contract of conditional sale imposes no lien upon property in favor of the vendor, for that or any other purpose. He does not sell, and receive back a pledge. He retains the title until he elects to part with it, and when he does so elect, the title passes from him; but nothing else thereby springs up in its place in the nature of a lien or incumbrance upon the property, inuring to his benefit."

The supreme court of Minnesota, in *Alden v. Dyer & Bro.*, 92 Minn. 134, 99 N. W. 784, expressed substantially the same view, as follows:

"It must now be regarded as the settled law of this state, as well as in most others, that where personal property is sold and delivered with an agreement that the title thereto shall remain in the vendor until the payment of the purchase price, it is a conditional sale, and the transaction cannot be

held a mortgage; and it is equally as well settled that, upon the vendee's failure to comply with the condition as to payment, the vendor may elect to retake the property, or may treat the sale as absolute, and bring an action for the price, but the assertion of either right is an abandonment or waiver of the other."

Not only is this the undoubted law of this state, but it is the very theory upon which appellant is now resting its claim of absolute title to this automobile. The application and importance of this principle to our inquiry will be rendered more apparent as we proceed.

An examination of the authorities will show that there are several ways in which the seller under conditional sale contracts may so act that the law will impute therefrom to him an election to waive the conditions of the sale, resulting in title passing to the purchaser. While the decisions so holding will be found to relate to varying acts of the seller, they all rest upon the same underlying principle; to wit, that an election to hold the purchaser personally bound as a debtor owing the purchase price, results in such election vesting title in the purchaser. The bringing of a simple suit to recover the purchase price, unaided by any claim of lien upon, or attachment of, the property conditionally sold, constitutes an election to vest title in the purchaser and look to him only as a debtor owing the purchase price, under the holdings in the following cases: *Mathews Piano Co. v. Markle*, 86 Neb. 123, 124 N. W. 1129; *Poirier Mfg. Co. v. Kitts*, 18 N. D. 556, 120 N. W. 558; *American Process Co. v. Florida White Pressed Brick Co.*, 56 Fla. 116, 47 South. 842; *Holt Mfg. Co. v. Ewing*, 109 Cal. 353, 42 Pac. 435; *Avery v. Chapman*, 127 N. Y. Supp. 721; *Crompton v. Beach, supra; Richards v. Schreiber etc. Co.*, 98 Iowa 422, 67 N. W. 569; *Alden v. Dyer & Bro., supra.* The following decisions deal with suits seeking recovery of the purchase price, accompanied by attachment or claim of lien against the conditionally sold property: *Butler v. Dodson*, 78 Ark.

569, 94 S. W. 703; *Smith v. Barber*, 153 Ind. 322, 53 N. E. 1014.

It might be argued that an attempt by suit to fasten a lien upon the very property sold furnishes a stronger reason for holding such suit to be an election by the seller to pass the title to the purchaser. But after all, such suits are only efforts to recover the purchase price as a debt against the purchaser, and that fact is just as inconsistent with the seller's retaining the title, as his claim of lien upon the property. It seems inconceivable that the absolute title remain in the seller and at the same time the purchase price be an enforcible debt obligation against the purchaser. This court has expressed views in harmony with the decisions above noticed, in *Jones v. Reynolds*, 45 Wash. 371, 88 Pac. 577, and *Ramey v. Smith,* 56 Wash. 604, 106 Pac. 160. The latter involved a suit and judgment rendered thereon against the purchaser, without any effort to fasten a specific lien upon the conditionally sold property. The following decisions are of particular interest, in that they involve suits by the seller against the purchaser which were unsuccessful or voluntarily abandoned, yet they were held to constitute elections: *Orcutt v. Rickenbrodt*, 42 App. Div. 238, 59 N. Y. Supp. 1008; *Hickman v. Richburg*, 122 Ala. 638, 26 South. 136; *Frisch v. Wells*, 200 Mass. 429, 86 N. E. 775, 23 L. R. A. (N. S.) 144.

In this last cited case the court observed:

"It must be presumed, from the record, that with knowledge of his legal rights, and being in possession of the facts, the plaintiff chose to bring suit for the balance due, and to arrest and hold the body of the debtor, until he was discharged upon taking the oath prescribed by Rev. Laws, c. 168, Sec. 40. The plaintiff failed to enter the writ. It is not, however, the judgment which may be obtained, but the commencement of a suit to enforce a coexisting inconsistent remedy in a court having jurisdiction, which constitutes the decisive act, and makes the election binding. *Butler v. Hildreth*, 5 Metc. 49; *Connihan v. Thompson*, 111 Mass. 272;

*Bailey v. Hervey*, 135 Mass. 172. The answer was a general denial, which put in issue, not only the plaintiff's right to possession, but his title to the property. *D'Arcy v. Steuer*, 179 Mass. 40, 41, 60 N. E. 405. Having once made an irrevocable election, the 'title was relinquished or waived, and the present action is absolutely barred. *Bailey v. Hervey*, 135 Mass. 172; *Whitney v. Abbott*, 191 Mass. 59, 77 N. E. 524."

No decision has come to our notice involving an election resting alone upon the indorsing and transferring to a third party of a conditional sale note of the nature here involved, as collateral security for a loan made to the payee and seller. We are, however, cited to two Texas decisions seemingly directly in point, in so far as the principle here involved is concerned. They are *Merchants' & Planters' Bank v. Thomas & Sons*, 69 Tex. 237, 6 S. W. 565, and *Parlin & Orendorff Co. v. Harrell*, 8 Tex. Civ. App. 368, 27 S. W. 1084. These cases apparently involve indorsement and sale of the notes. In the latter case, the former is commented upon and followed, the court observing:

"They are not in an attitude to maintain the suit. They indorsed at least one of the notes given by Burns & Munn for the goods to a bank in Illinois, thus making their election to rely on their right to enforce the contract of sale. Upon failure of Burns & Munn to pay the purchase price of the goods, they could elect to sue on the notes for the debt due, or to abandon the sale and recover the goods. They could not, after electing to abide by the sale, by transfer of the notes or one of them, sue to recover the goods sold. In the case of *Bank v. Thomas*, 69 Tex. 237, 6 S. W. 565, it was decided by the supreme court of this state that when the owner of personal property transfers his possession to one who executes his notes for the purchase price, and, by a contract executed at the time, the title to the goods is to remain in the vendor until the price is paid, and, on default of payment, the vendor may regain possession of the goods, the vendor may elect to enforce payment of the notes or recover possession, but that he could not do both, and that the assertion of one right is the abandonment of the other; that the transfer of the notes was an election to enforce payment

thereof, and an abandonment of the title, vesting it in the vendee. 'The contract once abandoned,'. says the court, 'could not be restored by any action on the part of the vendors and the indorsees without the consent of the vendee.' And it was held that, if the vendors repossessed the notes, they thereby obtained only such rights against the makers as were held by the parties (the indorsees) from whom they received them, the right to enforce their payment by suit against the makers. 'Had the notes been indorsed simply for collection, the case might have been different, as no suit had been brought upon them; but as to this there was no proof, and the presumption is that the sale of the notes was absolute, and for a valuable consideration.' The transfer of one of the notes, as shown in the case before us, had the same effect as to election of rights under the contract as the transfer of all of them. Upon the ground, then, that plaintiff could not recover the property after having elected to enforce payment of the purchase price, we conclude that the judgment of the lower court must be affirmed."

Counsel for appellant seek to lessen the force of the doctrine of the decisions above noticed, as applicable to the facts of this case, by citation of decisions which hold that acts of the nature therein involved, as well as certain other acts indicating an intention on the part of seller to look to the purchaser only as a debtor, do not necessarily constitute an affirmance of the sale. Let us notice some of them: In *Goodkind v. Gilliam*, 19 Mont. 385, 48 Pac. 548, after entering into the conditional sale contract, the seller took from the purchaser a mortgage upon the property, which he foreclosed and thereby became the owner of the property. Thereafter, by agreement between them, the property was again placed in the possession of the purchaser under the terms of the original contract of conditional sale. The taking of the chattel mortgage and foreclosing of it was held not to be a waiver affecting subsequent acquired rights of the seller, evidently because it could not influence the subsequent agreement which simply adopted the original contract and was, in effect, a new conditional sale. In *Sargent v. Metcalf*, 5

Gray 306, it was merely held that the vendor did not waive the conditions of the sale and pass title to the vendee merely by asking and being promised additional security which was never given. This was not an unqualified election to look to the vendee as a debtor only. In *Warner Elevator Mfg. Co. v. Capitol Investment, Building & Loan Ass'n*, 127 Mich. 323, 86 N. W. 828, 89 Am. St. 473, an unsuccessful attempt to enforce a mechanics' lien was held not to be a waiver, evidently upon the theory that the contract created nothing but a lien to secure the purchase price, and that two such liens could exist at the same time.

In *American Box Mach. Co. v. Zentgraf*, 45 App. Div. 522, 61 N. Y. Supp. 417, the contract, by its very terms, prevented a waiver of one remedy by an attempt to exercise the other, so in that case there was no question of an election. In the case of *Monitor Drill Co. v. Mercer*, 163 Fed. 943, there was held to be no election by the taking of collateral security for the purchase price. But in that contract it was provided that, upon retaking the property by the seller, he was to apply the proceeds to the payment of the indebtedness and deliver the surplus, if any, to the purchaser. It is apparent that an unconditional title was not reserved in that contract as in this. In *Ward v. Yarnelle*, 173 Ind. 535, 91 N. E. 7, it was simply held that the waiver of a right to a mechanics' lien upon the building, into the construction of which the conditionally sold property went, was not an election and did not affect the reserved title. This was not only not inconsistent with the seller's title, but was directly in harmony therewith. Had the seller insisted on his right of lien, there might have been some room for argument as to whether or not that constituted an election. The following cases, cited by appellant's counsel, may not be so readily distinguishable, and possibly lend some support to appellant's contentions: *Standard Steam Laundry v. Dole*, 22 Utah 311, 61 Pac. 1103; *First Nat. Bank v. Reid*, 122 Iowa 280, 98 N. W. 107; *Bierce v. Hutchins*, 205 U. S. 340.

These decisions, however, are not of such controlling force as to lead us to adopt appellant's contentions and depart from the doctrine of the authorities we have noticed supporting the contrary view, with which our own decisions are in harmony; especially in so far as they hold that the suing for the purchase price constitutes an election where the title reserved by the seller is absolute and unconditional, as in this case.

Did the title pass with the transfer of the note to the bank as collateral security? Counsel for appellant do not seriously contend that it did, but call our attention to the following decisions holding that, under certain circumstances, the title to the property passes with the transfer of the note evidencing the balance of the purchase price. *Cutting v. Whittemore,* 72 N. H. 107, 54 Atl. 1098; *Ross-Meehan Brake Shoe Foundry Co. v. Pascagoula Ice Co.,* 72 Miss. 608, 18 South. 364. These decisions, and others in harmony therewith, it will be found upon examination, hold that the property passes with the assignment of the purchase money note because of the law of the jurisdiction which regards such contracts only as security in the nature of liens, or because of the terms of the contract creating only a lien securing the debt. This is nothing but an application of the well known doctrine of equity that an assignment of the secured debt carries the right to the security. Of course, counsel for appellant could not safely rest upon this theory, because it would at once destroy the absolute unconditional title which it is claiming. Thus is emphasized the importance of keeping in mind the fact that the sale contract did not create a lien, but that it reserved an absolute title in the seller, which was as absolutely to pass to the purchaser upon certain conditions. There is not the slightest question of security for a debt here involved.

Now let us view the situation as it existed at the time of the endorsement and transfer of the note to the bank by appellant as collateral security, ignoring for the present all

subsequent events. That note, upon its face, had no connection whatever with the conditional sale contract. It was, in the manner stated, transferred to the bank before maturity as collateral security. There is nothing in the record indicating any intention to transfer to the bank with the note appellant's title in the conditionally sold property. At that time no conditions of the contract were broken entitling appellant to retake the property, nor had appellant at that time assumed to retake the property. In view of these facts, what intention will the law impute to appellant by thus transferring this note? Now, of course, the purpose of the transfer to the bank was to render the note available to the bank as collateral security for its loan to appellant. The only value that this note could possibly have in the hands of the bank was that of any other piece of negotiable paper acquired by the bank before maturity; that is, it became a debt payable unconditionally at a stated time from Burch to the bank or its assignees. Appellant must have then elected to have that note assume this function, for in no other way could it be of any value to the bank as security. By that transfer the note was freed from all connection with the conditional sale contract. The bank acquired no right in or lien upon the property, for the title thereto either remained absolutely in appellant or, by the transfer of the note, passed absolutely from appellant to Burch by virtue of that act as an election on his part.

Some effort is made to distinguish between the effect of the assignment of this note as collateral security and an assignment of a note upon a sale thereof, as in the Texas cases above cited. It will not do to make any such distinction, for to do so would be to take away from the note in the hands of the bank the very quality which it was intended to possess by the transfer to the bank; to wit, the quality of an absolute debt obligation against Burch, as any negotiable note executed by him would have. We are of the opinion that when appellant assigned the note to the bank, that act constituted

in law an election on its part to waive the conditions of the sale, and resulted in vesting absolute title in Burch. It was an election to place Burch in such a position that he became an unconditional debtor for the purchase price of the property.

Counsel for appellant rely upon the events which occurred thereafter as in some way preventing or undoing this result. That such events did not prevent this result seems to us to be fully answered by what has already been said. How, then, was the title to the automobile restored to appellant? We are unable to see how the taking possession of the automobile by appellant at the time it did would have any effect towards restoring the title to it. At that time none of the conditions of the sale were broken by Burch, and there is nothing in this record to indicate that appellant had any right whatever to take possession of the automobile at that time even had not the absolute title previously passed to Burch. The mere fact that Burch absconded did not give to appellant any such right of possession, and it cannot be seriously claimed that Burch consented to the retaking of the property by appellant. Neither are we able to see that the taking up of the note by appellant from the bank had the slightest effect upon the title of the automobile. We have seen that the title had already passed to Burch by the act of appellant in assigning the note to the bank. The title to the automobile did not pass with the note back to appellant any more than it passed with the note from appellant to the bank. The very fact, as we have seen, that we are not dealing with the property as security for a debt, renders all speculation touching the effect of the events subsequent to the original transfer of the note by appellant to the bank as wholly foreign to the question of the title to the automobile.

Considerable is said in the briefs about the moral and equitable rights of the respective parties. To enter upon the consideration of the rights of the parties from such a standpoint would probably show that they are fairly evenly

balanced.    But such considerations have no place in this case.    The controlling facts are beyond dispute, and from them, by well settled rules of law, the rights of the parties can be clearly ascertained.    Our conclusions render it unnecessary to express an opinion on the effect of the failure to file the sale contract with the county auditor under Rem. & Bal. Code, § 3670; involving the question of whether or not respondent, as an attaching creditor suing for a debt existing before the date of the sale contract, is such an incumbrancer that the conditional sale is void as to it without such filing.

We conclude that the judgment of the learned trial court is in accord with the law as applicable to the undisputed facts.

The judgment is affirmed.

GOSE, FULLERTON, and MOUNT, JJ., concur.