ST. PAUL TRUST COMPANY v. UNITED STATES CEREAL
COMPANY AND OTHERS.[1]

December 11, 1925.

No. 24,930.

**Mill machinery, sold conditionally as personal property and attached to realty, passed as realty when seller foreclosed its real estate mortgage for unpaid purchase price.**

1. The Wolf Company sold the Cereal Company machinery which was immediately attached to and made physically a part of the latter's mill property and as such real estate. The Wolf Company, under conditional sales contracts, reserved title to the machinery and the right to retake it as its own personal property. Thereafter it took mortgages on the Cereal Company's real estate, including the machinery. Those mortgages expressly reserved the mortgagee's right to retake the machines as its personal property. They were foreclosed by advertisement, the whole unpaid purchase price which they secured being declared by the Wolf Company to be due from the Cereal Company as a debt. All of the real estate was sold under the foreclosures. *Held* that the machinery passed as a part of the realty, because

(a) It was in fact a part of the realty and necessarily had to pass therewith, for the reason that

(b) the one party, the Wolf Company, having the right to change its status and reconvert it into personalty has never exercised that right, but

(c) on the contrary, has lost it through its election of the inconsistent remedy of declaring the whole unpaid purchase price due absolutely as a debt and accordingly foreclosing on and selling the whole property as the real estate of the debtor and mortgagor.

**Mortgagee entitled to foreclose for entire debt regardless of provision for release.**

2. One of the mortgages in question while security for the entire debt provided for its release upon payment of one-half thereof in cash. Nothing having been paid, the mortgagee was entitled to foreclose and sell for the entire debt under the power of sale entitling him to retain enough of the proceeds to pay the whole debt with interest and costs.

[1]Reported in 206 N. W. 385.

1. See Fixtures, 26 C. J. p. 679, § 42 (Anno).
2. See Mortgages, 27 Cyc. p. 1060 (Anno); p. 1497.

1. See note in 37 L. R. A. (N. S.) 119.
2. See note in 13 A. L. R. 448.  11 R. C. L. p. 1066; 4 R. C. L.
   Supp. p. 731.

Action in the district court for Hennepin county to foreclose a deed of trust. The case was tried before Waite, J., who ordered judgment that, excepting six specified machines, all the machinery attached to the buildings is the property of defendant Wolf Company and free from any lien of plaintiff, and granted judgment in favor of plaintiff for the exempted machinery. Plaintiff appealed from the judgment. Kretz Realty Company also appealed. Affirmed.

*Frederick W. Foote* and *George H. Selover*, for appellants.

*William A. Anderson, Doherty, Rumble, Bunn & Butler* and *Walter K. Sharpe*, for respondents.

STONE, J.

Action by the trustee to foreclose a deed of trust upon the flour mill property of defendant, United States Cereal Company. The one issue concerns the title to upwards of $200,000 worth of mill machinery and other equipment sold under a conditional sales contract to the Cereal Company by defendant the Wolf Company. The decision below was for the Wolf Company and plaintiff appeals from the judgment. Defendant Kretz Realty Company, a judgment creditor of the Cereal Company and a holder of some of the bonds secured by the trust deed, also appeals.

Plaintiff's trust deed took effect as contract and lien March 15, 1923. In point of time and expressly, it was subordinate to all of the other encumbrances with which we are concerned. It secured a bond issue of $400,000, of which bonds aggregating $115,000 have been issued and remain unpaid. It covered, in addition to real estate, "all machinery, tools and equipment and renewals and replacements thereof" then or thereafter used in connection with the

buildings on the premises. The ground consisted of seven lots in Minneapolis, one portion of them to be herein referred to as the old mill property and the remainder as the new mill property. Senior to all else as liens on the land were two mortgages; one on the new mill property to the Lundquist Company for $25,000 and the other on the old mill property to one Sauset for $5,000. The former, in apt terms, denied itself any lien on machinery.

In September, 1920, under a conditional sales contract, the Wolf Company sold to the Cereal Company machinery and equipment for its new flour mill, then approaching completion. The agreed price was $227,206.34. The contract required payment for each shipment thereunder, half in cash and half by four months' note. Other provisions were that the title to the machinery should remain in the Wolf Company until fully paid for in money, "notwithstanding any agreement or security made or taken now or hereafter to assure to the company the performance of this agreement;" and that "said machinery *shall remain the personal property of the company* whatever may be the mode of its attachment to realty or otherwise, until fully paid for in cash." (Italics ours.) There was no stipulation anywhere that the machinery or any part of it would be considered, for any purpose, the *personal* property of the Cereal Company. It was agreed finally that all notes and securities taken by the Wolf Company should not be in payment but only as evidence of the indebtedness and that every such "assurance should be collateral" only.

Financial difficulties beset the Cereal Company. As the machinery began to arrive, it was unable to go very far with the payments. It did pay in cash and secured notes more than $62,000. On November 26, 1921, there was an unpaid balance of over $163,000. To evidence and secure that debt, and in consideration of its delivery of machinery notwithstanding default in cash payments, the Wolf Company accepted notes and a mortgage from the Cereal Company upon the new mill property. Therein the conventional description of the lots was supplemented by this "including all buildings thereon and all machinery in said buildings." Another provision of the mortgage, stressed by appellants, is this:

"It is further understood and agreed that the mortgagor has only an equity in a large portion of the machinery covered by this mortgage, and that the party of the second part does not in any manner waive or lessen the right which the mortgagee has under and by virtue of the contract of sale hereinbefore referred to, by the acceptance of this mortgage."

Later, having sold additional machinery to the Cereal Company, and the price of $7,280 being unpaid, the Wolf Company took another mortgage, this time on the old mill property, "including all buildings thereon and all machinery in said buildings." This mortgage secured the old as well as the new obligations, referred to the first mortgage to the Wolf Company and provided that the new mortgage was given as "additional security" for the first notes.

About as fast as the machinery arrived, it was installed in the mill so that, in the apt language of the findings, "every item thereof became an essential part of a co-ordinated and complete flouring mill, and a permanent fixture attached to the real property * * * and the whole thereof * * * has been ever since its installation and now is a part of said real estate." Apparently only a negligible part of the machinery was of such a nature that its status, after becoming a part of the mill unit, could be so equivocal as to depend, as to being real or personal property in fact, upon the intention of the parties or any of them. There is such property sometimes in a twilight zone between realty and personalty, e. g., the gas ranges and wall beds of the modern cliffdweller's apartment. Hanson v. Vose, 144 Minn. 264, 175 N. W. 113, 7 A. L. R. 1573.

None of the required payments having been made, it became necessary for the Wolf Company to enforce its security. Its first step was to take over by assignment and foreclose the Lundquist and Sauset mortgages. Separately and in January, 1924, the Wolf Company foreclosed by advertisement its own mortgages and again became the purchaser. In that capacity it made redemption from the foreclosure of the Lundquist and Sauset mortgages, so that its present title rests upon its own mortgages, the foreclosure thereof and absence of redemption thereunder.

Appellants concede that title as to land and buildings, but deny it as to machinery and other mill equipment. They argue thus: Under the original conditional sales contracts and both the following mortgages, the machinery and equipment remained personal property; as between the contracting parties it has never ceased to be personal property; by the foreclosure sales for the total indebtedness, the latter has been paid, so that, while the Wolf Company owns the buildings, the machinery, remaining for the reasons stated personal property, did not pass by the foreclosures and is, in consequence of the admitted payment of the purchase price in the manner stated, the personal property of the Cereal Company and as such subject to plaintiff's trust deed (which expressly covers machinery and equipment), and also to the claims of other creditors.

It clears the ground for ready understanding to recall that it was not the purpose of anyone that the machinery should really remain personal property. Certainly it was no one's thought that it should remain *personal* property of the Cereal Company. If we eliminate the Wolf Company and its position as seller on condition, there would be no suggestion that the machinery or any part of it, after annexation to the real estate, remained personal property to any extent or for any purpose. This is not a case where something which is physically a fixture has an artificial but real and absolute chattel status, under an "agreement with the owner of the land," having the purpose and effect of preventing its subject matter from becoming a part of the realty, as to anyone or for any purpose. Merchants Nat. Bank v. Stanton, 55 Minn. 211 (218), 56 N. W. 821, 43 Am. St. 491. In contrast, there is only the reservation in favor of the Wolf Company, and none other, of the right, on default of the Cereal Company, to reclaim the machinery as its own personalty. That is the entire legal effect of the provision that it was to "remain" the personal property of the Wolf Company, not always, but only until payment. Compare N. W. L. & W. Co. v. Parker, 125 Minn. 107, 145 N. W. 964.

There is nothing unusual about the conditional sales contract in question. Such a contract is executory and "for a sale on condi-

tion." C. Aultman & Co. v. Olson, 43 Minn. 409, 45 N. W. 852. Until the performance of the condition, "the seller has the election (1) to reclaim the property; (2) to treat the sale as absolute and sue to recover the debt; (3) to bring an action to foreclose his lien." C. W. Raymond Co. v. Kahn, 124 Minn. 426, 145 N. W. 164 (51 L. R. A. [N. S.] 251). That the assertion of any one of the three rights so enumerated is an abandonment of the others, is well illustrated by Alden v. W. J. Dyer & Brother, 92 Minn. 134, 99 N. W. 784. There the unpaid seller divested its reserved title to a piano sold under a conditional sales contract, and by suing to recover the unpaid price as a debt lost its right to claim the instrument.

The status of chattels sold under such a contract, to be affixed unequivocally and immediately to real estate, may be one thing in fact and, conditionally, another in law. It is easy to go wrong in the pertinent legal theorization if we ignore the factual condition. We nullify stubborn fact here if we consider the machinery anything but real estate in fact. The plain actuality is, not that it remained personal property, but only that the vendor had the contract right by severance to retake it and so "reconvert it into personalty." Little v. Willford, 31 Minn. 173 (179), 17 N. W. 282. Whatever the terminology of contract or discussion used to reserve or describe the right and the resulting process relative to things that have become fixtures in fact, the purpose being that they shall so remain, it cannot be denied that both right and process are in fact as stated.

So when the mortgages were foreclosed, the machinery had long ceased to be personalty in fact and had become realty in fact. The Cereal Company had no right to have it considered otherwise by anyone or for any purpose. The conditional sales contracts did not, as argued by appellants, preserve "the status of the machinery as personal property until fully paid for." In lieu of that artificial status there was outstanding only the right, preserved and continued under the mortgage, in the Wolf Company and no one else, to retake the property as *its own* "personal property." Nothing of that kind was attempted. So in fact the machinery continued real estate and as such it passed under the foreclosure to the Wolf Company.

As we have shown, the one thing necessary to restore to the machinery its character as personalty was an election by the Wolf Company to reclaim and sever it as its personal property. To have done so would have negatived the idea of any remaining debt. C. W. Raymond Co. v. Kahn, supra. What the Wolf Company did was the contrary. It asserted the existence of the debt, declared due as such the unpaid residue and proceeded to foreclose accordingly. So the right to reclaim the machinery as chattel property was lost. It may be that the election so made was effective upon the service of the foreclosure notice declaring due as a debt and absolutely the unpaid purchase price with interest. Be that as it may, the election was certainly complete when the whole of the property was sold as a unit of real estate and for the total of principal, interest and costs. To hold otherwise would be to ignore two compelling facts—one that the machinery was actually real estate, and the other that the one party having the right to reconvert it never exercised that right, but on the contrary lost it irretrievably by the election of an inconsistent remedy.

We have attempted, as we always do, particular consideration of the argument against which we decide. Repeatedly do counsel for plaintiff press this interrogation: When, upon the theory adopted below, did this machinery turn into real estate and how? The answer is simple: The moment it became a part of the realty constituting the mill property. The converse and only pertinent inquiry is whether, having become real estate, anything happened thereafter to reconvert the machinery, for any purpose, into personalty so that it did not pass with the real estate when all of that was sold on foreclosure. The answer is clearly and emphatically negative.

Much is attempted to be made for plaintiff of the proposition that a seller on condition does not lose his rights by taking collateral security; and that, having a right to take collateral, he may enforce it without affecting his original remedies. That is true ordinarily, but the rule does not apply where the collateral is a mortgage upon the very property sold. If such a mortgage is foreclosed, the un-

paid vendor and mortgagee necessarily elects thereby to consider the title as having passed to the vendee and mortgagor. So he will not be permitted thereafter to aver the contrary and maintain that, notwithstanding his mortgage on the very property itself and his foreclosure, the title never passed to the vendee and mortgagor but, on the contrary, remained in him under his original contract. Hinchman v. Point Defiance Ry. Co. 14 Wash. 349, 44 Pac. 867; Kennedy v. Manry, 6 Ga. App. 816, 66 S. E. 29. Compare Dyckman v. Sevatson, 39 Minn. 132, 39 N. W. 73. The filing of a claim for the unpaid price in bankruptcy (American Process Co. v. Florida W. P. Brick Co. 56 Fla. 116, 47 South. 942, 16 Ann. Cas. 1054), or in probate (Holt Mnfg. Co. v. Ewing, 109 Cal. 353, 42 Pac. 435), or the assertion of a mechanic's lien (Hickman v. Richburg, 122 Ala. 638, 26 South. 136), waives the vendor's right to retake the property under a conditional sales contract. Each of the acts just referred to had the indicated result because it was "an unequivocal act on the part of the vendor, recognizing the title as being in the vendee." Hickman v. Richburg, supra. How can there be a more unequivocal act than the foreclosure which took place here?

Such cases as First Nat. Bank of Corning v. Reid, 122 Iowa, 280, 98 N. W. 107, cited for appellants, are not at all to the contrary. There a seller in addition to his conditional contract had a mortgage upon the goods. The latter covered property other than that which was subject to the contract. Before attempting to foreclose his mortgage, the seller replevied the goods which he had sold and the title of which he had reserved. That act, it was held, negatived "the idea of an election" to enforce the mortgage as against the goods in question. In passing it should be observed that now under the Uniforms Sales Act (G. S. 1923, § 8430), "the unpaid seller of goods, having a lien thereon, does not lose his lien by reason only that he has obtained judgment or decree for the price of the goods." See Defiance Machine Works v. Gill, 170 Wis. 477, 175 N. W. 940. That statute, if it had been in force at the time, might have required a different result in Alden v. W. J. Dyer & Brother, supra, and should be considered possibly as modifying the rule of C. W.

Raymond Co. v. Kahn, supra, to the extent that a mere action to recover the unpaid price is no longer such an election of remedies as to prevent the seller from reclaiming the property sold under a conditional sales contract. If that be the rule now, it does not affect this case, for here the property became real estate in fact and so continued to and through the foreclosure sales.

The fact that the mortgages reserved the rights of the mortgagee under the conditional sales contracts did not lessen their initial coverage of all of the real estate. The machinery was a part of the real estate. Nothing has occurred to alter that status so there is no application for the argument, advanced on behalf of the Kretz Realty Company, which, conceding that the foreclosure waived all rights under the contracts, urges that the result was to "continue" the machinery as personalty. That argument cannot apply because the machinery already was real estate.

After it got the mortgages, the Wolf Company had the right to take the machinery as personalty under the conditional sales contracts or as realty under the mortgages. Inevitably it would go with the real estate, unless severed or in some manner reserved. The Wolf Company was the only party having the right to sever or reserve. It did not do so. On the contrary, its foreclosure manifested a final and binding election to treat the machinery as part of the realty, thereby foregoing finally its option to retake it as personalty.

Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. ed. 828, is cited to the obvious but irrelevant proposition that one cannot transfer his property to another without the latter's consent. The idea here is accompanied by the wholly impossible conclusion that, by his mere election not to retake, as personalty under conditional sales contracts, chattels which have been sold and attached to the vendee's real estate, a vendor cannot vest the title thereto finally in the vendee, the suggestion being that such a result is impossible without the consent of the vendee. So it is, but under a conditional sales contract the necessary consent of the vendee is given to start with. It is more than mere consent for he contracts to take the title and pay for it. He has no election to withdraw. The only

election is with the vendor who by his own act, unaided by the vendee, may put the title irrevocably in the latter.

There is a subsidiary point for appellants. It is to the effect that the first mortgage to the Wolf Company never secured more than half of the $163,000 debt which it purported to secure. That argument is based upon the following provision of the mortgage:

"It is further specifically covenanted and agreed  *  *  *  that when the said United States Cereal Company has paid in cash one-half of the purchase price of $227,206.34 for mill machinery  *  *  * the said Wolf Company is to release the premises herein described from the operation of this mortgage."

That language cannot be given the effect sought by plaintiff. It must be construed, of course, in connection with the rest of the mortgage contract. The effect of the whole instrument is as security for the whole debt, conditioned however that if and when one-half of the original purchase price should be paid *"in cash,"* the premises should be released "from the operation" of the mortgage. The specified condition precedent, i. e. "payment in cash" of half of the price, not having been performed, the covenant depending thereon has never become operative.

That conclusion is confirmed by the power of sale which authorized the retention by the mortgagee of enough of the proceeds of foreclosure to cover the whole principal and interest of the secured debt together with taxes, insurance, attorney's fees and costs.

Judgment affirmed.