## AVERY v. CHAPMAN.

(Supreme Court, Special Term, Monroe County. February 17, 1911.)

1. SALES (§ 477*)—CONDITIONAL SALES—ELECTION BY SELLER.

A sale contract permitting the seller to repossess himself on the buyer's default in any installment of the price, or to declare the whole price due, permitted him, on default, to elect to rescind or treat the transaction as an absolute sale, but suit for the whole price on the buyer's default vested title in the buyer so as to permit him to pass good title pending the suit.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. § 477.*]

2. ESTOPPEL .(§ 68*)—JUDICIAL PROCEEDINGS.

A seller, having sued for the price alleging a sale and delivery and having caused execution against the property, is estopped to claim, in a subsequent suit, that title remained in him.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

3. FRAUDULENT CONVEYANCES (§ 295*)—EVIDENCE—WEIGHT.

A finding that a piano was not transferred with intent to defraud the seller *held* not against the weight of the evidence.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. § 295.*]

4. SALES (§ 201*)—PASSING OF TITLE—REQUISITES.

No formal act was necessary to transfer possession of a piano on premises occupied jointly by the seller and buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. § 201.*]

Action by Sophia M. Avery against Eugene J. Chapman. On defendant's motion for a new trial. Motion overruled.

F. F. Zimmerman, for plaintiff.

D. Edgar Parsons and P. Chamberlain, for defendant.

FOOTE, J. On the 3d day of June, 1910, defendant, who was a dealer in pianos, entered into a contract on one of defendant's printed forms with Erwin J. Fowley and Lillian May Fowley for the sale to them of a piano for the price of $265, to be paid in installments of $5 on August 1st following and $1.25 per week thereafter, with interest. The contract contained these provisions:

"It is also mutually understood and agreed that said E. J. Chapman, or his assigns, do not part with, nor do I acquire any interest whatsoever in said instrument until the whole of said purchase price and interest is fully paid, according to the terms above mentioned.

"In case of any failure on my part to fulfill and observe each and every of the terms of this agreement, or upon default of any payment of principal or interest, the whole sum shall, at the option of E. J. Chapman, become immediately due and payable, anything heretofore to the contrary notwithstanding, and he may sue for the entire amount aforesaid. And in case of such failure or default, or if E. J. Chapman at any time deems himself insecure, he or his agents, attorney or assigns, may enter my house and take said instrument into his possession and collect charges for transportation to and from my residence and all payments heretofore made by me on this agreement shall be considered as made to said E. J. Chapman, or to his assigns, for the use of said instrument and not on account of purchase thereof, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in case of repossession by E. J. Chapman I hereby waive all claims of every name and nature."

This contract was signed by the Fowleys alone; but the piano had previously been delivered to them by Chapman's agent on trial and was then in their possession. The Fowleys defaulted on all the payments, and on August 16, 1910, Chapman began an action against them in the Municipal Court of the City of Rochester. The complaint in that action was verified by Chapman, and, among other things, alleged that on June 3, 1910, he sold and delivered to the Fowleys, defendants, said piano at their special instance and request, at the value and agreed price of $265. It also alleged the making by the Fowleys of the contract above mentioned, and a copy thereof was attached, and that said Fowleys had failed to make any payments whatsoever thereon. It also alleged that there was justly due to plaintiff from defendants $265, with interest from June 3, 1910. It did not allege that plaintiff had elected that the whole purchase price should become due. The Fowleys interposed no defense, and on August 30th judgment was rendered in Chapman's favor by default for $278.46, damages and costs.

While this action was pending, and on August 27, 1910, the Fowleys sold this piano to plaintiff for $100; plaintiff being the mother of Lillian M. Fowley and residing with the Fowleys in the same house, where this piano then was. A written bill of sale of the piano was made by the Fowleys to plaintiff. These parties had taken counsel and had been advised that the commencement of the action in the Municipal Court by Chapman was an election of remedies by him and its legal effect was to waive his title in the piano and vest it in the Fowleys, and that they could give good title thereto to plaintiff.

Defendant Chapman caused execution upon said Municipal Court judgment to be issued to a constable and directed the constable to levy upon said piano, which was done, and the same was removed to defendant's store and subsequently sold under the execution and purchased by defendant for $85. Before this levy defendant was informed of the bill of sale to plaintiff of the piano. This action was brought to recover the value of the piano as upon a conversion thereof, and the value of the piano was conceded upon the trial to be $85, and for that amount a verdict has been rendered in favor of plaintiff.

Two principal grounds of error upon the trial are urged by defendant's counsel upon this motion: First, that the Fowleys had no title to the piano, and that defendant's motion for a nonsuit should have been granted upon this theory. Further consideration of this question confirms the view I entertained at the trial that by commencing the action in the Municipal Court against the Fowleys for the full purchase price of the piano defendant elected to treat the sale of the piano as consummated, and that upon such election the title vested in the Fowleys. The contract contains a clause by which the Fowleys agreed to purchase said piano and to pay Chapman therefor $265. The other clauses quoted above in reference to reserving title are intended for Chapman's security and protection. In legal effect, they give Chapman the privilege or option of rescinding the contract of sale, and it is

plain that, if Chapman repossesses himself of the piano, he does thereby rescind the sale, for, in that event, it is provided that:

"All payments heretofore made on this agreement shall be considered as made to said Chapman for the use of said instrument and not on account of purchase thereof, and in case of repossession by E. J. Chapman, I hereby waive all claims of every name and nature."

The contract does not contemplate, nor is any right given to Chapman upon repossessing himself of the piano to continue to hold it as security for the purchase price, nor does the contract give to the Fowleys in that case any right thereafter to tender the balance of the purchase price and retake the piano. All their claim or right to purchase is then expressly waived. In this respect the contract differs from those in the cases upon which defendant's counsel relies.

The proper and necessary construction of the contract is that Chapman had the option of treating the transaction as a sale of the piano or not, as he should elect. He could not elect that it should be both. If he elected to repossess himself of the piano, he could not thereafter treat it as a sale or hold the Fowleys liable for further installments of the purchase price. Conversely, if he elected to treat it as a sale and to hold the Fowleys liable for the whole purchase price by an action at law, then he waived the other option, to be exercised only in case he elected there should be no sale.

That bringing an action for the purchase price is conclusive election to waive the title and any right to reclaim possession of the piano was decided in this department in the case of Orcutt v. Rickenbrodt, 42 App. Div. 238, 59 N. Y. Supp. 1008, and the authority of that case has not been anywhere overthrown. There are numerous other decisions to the same effect, and such as appear to the contrary will, upon examination, be found to rest upon a different form of contract or to be otherwise distinguishable.

The same rule prevails in other jurisdictions. Frisch v. Wells, 200 Mass. 429, 86 N. E. 775, 23 L. R. A. (N. S.) 144; Whitney v. Abbott, 191 Mass. 59, 77 N. E. 524. But, if the rule were otherwise, the defendant here is not in a position to so assert, because he alleged in his complaint in the Municipal Court action that he had sold and delivered this piano to the Fowleys, and as soon as he obtained judgment he directed the officer to levy upon this piano as the property of the Fowleys. These proceedings are plainly inconsistent with that assumed by him upon this trial. The case in this respect is analogous to Kirk v. Crystal, 118 App. Div. 32, 103 N. Y. Supp. 17, affirmed 193 N. Y. 622, 86 N. E. 1126, where it was held that the vendor of a steam-heating plant on a conditional sale reserving the title filed a notice of mechanic's lien against the real property in which the heating plant was installed; that the filing of such notice was the assertion of a claim irreconcilable and inconsistent with the claim that the title to the heating plant still remained in him and was an election of remedies by which he was conclusively bound.

The second point made upon this motion is that the verdict of the jury is contrary to and against the weight of the evidence upon the question as to whether the bill of sale of the piano from the Fowleys

to the plaintiff was made for the purpose and with intent to hinder, delay, and defraud creditors, particularly the defendant Chapman.

No complaint is made on this motion of the manner in which this question was left to the jury, but the argument presented is that because plaintiff was fully acquainted with the circumstances under which the Fowleys had acquired the piano, with the form of the contract of purchase, and with the fact that no payments had been made and that suit was pending against them for the purchase price, and because plaintiff is the mother of Mrs. Fowley, the jury should have found an intent to hinder and delay or defraud defendant. No doubt the evidence would have justified a verdict to that effect; but the question was one of intent, and it cannot be said as matter of law that plaintiff purchased the piano with such an intent. The fact that she paid her daughter $100 for the piano was clearly proved, and, as its value upon this trial was conceded to be only $85, the price paid was not evidence of a fraudulent intent. I cannot say that the verdict is contrary to the evidence on this question. As the piano stood in a room of the dwelling occupied in common by plaintiff and the Fowleys, no formal act was necessary to transfer possession from the Fowleys to plaintiff. Possession followed the legal title, without any formal act of delivery.

I find no ground for disturbing the verdict, and deny the motion, with $10 costs.