[No. 11844.    Department One.    October 9, 1914.]

## A. L. MacLeod, *Respondent*, v. Aberdeen Brewing Company, *Appellant.*[1]

Sales—Contracts—Title—When Passes—Intention — Evidence —Sufficiency. The evidence is sufficient to warrant the finding of a jury that it was the intention of the parties to a settlement that the title to a saloon, sold as one of the items of the settlement, was not to pass to the vendee until a bill of sale therefor was delivered, where it appears that the vendor was a corporation and its representatives at the settlement stated that the action taken would have to be ratified by the directors, that the saloon in question listed to the vendee had been previously sold under a conditional sales contract for $5,000, $1,500 of which had been paid, that the notes for the balance of the conditional sales price had been negotiated at a bank as collateral for a loan, that the saloon continued to remain in the possession of the same parties who continued to pay rent and interest on the purchase price to the company, and the notes remained in the possession of the bank as collateral, and there was evidence that the relations between the vendor and the vendee in the conditional sale continued to remain the same, and other facts and circumstances tended to show that the intent was to pass title by a bill of sale, which was not tendered until after the property had been destroyed by fire.

Sales — Conditional Sales — When Title Passes — Negotiation of Purchase Money Notes. Where notes, given for the purchase price of property under a conditional sales contract, were thereafter negotiated to a bank as collateral security, the title thereby passes to the vendee in the conditional sales contract.

Appeal—Review — Harmless Error — Instructions. Error cannot be predicated upon an instruction upon an immaterial matter, where the jury could not have been misled thereby.

Damages—Excessive Verdict. Where a new trial was granted, and the second verdict merely added interest to the amount of the first, the second verdict is not excessive, where the evidence sustained the value expressed by the first verdict, and there was no question about the interest.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered September 9, 1913, upon the

[1]Reported in 143 Pac. 440.

verdict of a jury rendered in favor of the plaintiff, in an action for damages for breach of contract.    Affirmed.

*McClure & McClure*, for appellant.

*Peters & Powell*, for respondent.

MAIN, J.—The purpose of this action was to recover damages for failure to transfer and deliver to the plaintiff, as agreed, certain saloon property in the city of Aberdeen, Washington.    The cause was tried to the court and a jury. A verdict was returned for the plaintiff in the sum of $5,895. The defendant interposed a motion for judgment notwithstanding the verdict and, in event it was denied, for a new trial.    The court declined to enter a judgment notwithstanding the verdict, and overruled the motion for a new trial.    Thereupon judgment was entered upon the verdict. The defendant appeals.

The facts in the case are substantially as follows:    The appellant is a Washington corporation, engaged in the manufacture and sale of beer at Aberdeen.    For approximately one and one-half years prior to April 18, 1908, the respondent had been the manager of this corporation.    For a somewhat longer period, he had acted as its secretary.    On April 18, 1908, the respondent and the appellant entered upon negotiations looking to an adjustment and settlement of the questions which had grown out of the business relations of the parties.    At this conference, the appellant had two representatives, its attorney and one other.    There was also present the assistant manager, who acted as a sort of intermediary, using his good offices, so far as possible, to affect an amicable adjustment of the affairs.    When legal questions were under discussion, being a lawyer, he advised the respondent as to his rights.    The negotiations looking to a settlement extended over several days.    Finally a settlement was agreed upon.    By the terms of this agreement, the respondent was charged with certain items of property, amounting

in the aggregate to $32,300.80, and was given credit for property which he turned over to the company aggregating $26,965.13, leaving a balance due the company of $5,335.67, for which he gave his note. Included in the properties which were to be taken by the respondent, were two saloons, one called the Cosmopolis saloon, at Cosmopolis, Washington, and the other called the Alaska saloon, at Aberdeen. The Cosmopolis saloon was listed to the respondent at the price of $4,500; the Alaska saloon was listed to him at the price of $4,050. The controversy in this case arises over the Alaska saloon.

Some time during the fall of the year 1907, the respondent, as manager of the brewing company, had sold this saloon to Sorensen & McDonald for the sum of $5,000, $500 of which sum was paid in cash; and notes in the sum of $150, each, payable monthly thereafter, were taken for the balance of the purchase price. During the trial, this transfer to Sorensen & McDonald was referred to as a conditional sale. The contract, however, was not introduced in evidence, nor was there any testimony as to its terms and conditions. At the time of the settlement, three of the notes which had been given by Sorensen & McDonald for the purchase price of the saloon had been paid. The Sorensen & McDonald notes had, prior to April 18, 1908, been indorsed to the Aberdeen State Bank by the Brewing Company, as collateral security for a loan to it. After the settlement, the assistant manager took active charge of the business of the Brewing Company. The respondent remained as nominal manager until about June 1st of the same year, when he departed for California to be gone a number of weeks. When the settlement was consummated, conveyances were made between the parties, except no bill of sale of either of the saloons was executed or delivered to the respondent. It was necessary that these bills of sale be executed by the president of the company, who was not present at the conference. The respondent returned from California about the middle of July. On the 29th of

this month, the Alaska saloon was destroyed by fire. During the month of August following, the president of the company tendered to the respondent two bills of sale, one for the Cosmopolis saloon and the other for the Alaska saloon. The bill of sale for the former was accepted, and that for the latter was refused because the property had previously been destroyed. Other facts will be noticed in connection with the consideration of the points to which they may be particularly germane.

The principal question in this case is whether there was evidence from which the jury might reasonably have drawn the inference that the parties did not intend the title to the Alaska saloon to pass until the bill of sale therefor had been executed and delivered. Upon this branch of the case, there seems to be no controversy over the law. Both parties recognize the general rule that, in a sale of personal property, assuming that the statute of frauds is not involved or has been satisfied, and the rights of subsequent purchasers or creditors are not concerned, the title to the property will pass upon the completion of the contract, if the property has been identified and appropriated to the contract, even though it be not delivered, unless the contrary intention appears. 1 Mechem, Sales, § 485.

The trial court, by an appropriate instruction, submitted to the jury the question as to when the parties intended that the title to the Alaska saloon should pass. The jury, by its verdict, in effect found that it was the intention that the title should not pass until the bill of sale had been delivered. The appellant claims that there is no evidence which justifies this finding of the jury, and that the question, therefore, was one of law for the court. The respondent claims that there was evidence from which the jury might reasonably conclude that it was the intention of the parties that the title should not presently pass. Upon this question, the evidence showed that the attorney for the company, at the time the settlement was concluded, stated that the board of trustees would have to

ratify the transaction. It also appears that, after the settlement had been concluded, the brewing company continued to collect rent from Sorensen & McDonald, the same as it had done before, and continued to charge Sorensen & McDonald interest upon the purchase price of the saloon. The saloon remained in the possession of the same parties and the notes remained in the possession of the bank as collateral security for a loan of the company. One witness testified that, subsequent to the settlement, there was no change in the relation between the company and Sorensen & McDonald. The respondent testified that, at the time he refused to accept the bill of sale for the Alaska saloon, the president of the company, who tendered it, stated that a settlement was due him. There are other facts and circumstances which would tend to show that the parties did not intend the title to pass until the delivery of the bill of sale. But those stated show that there was evidence from which the jury might reasonably draw the inference that it was not the intention of the parties that the title should pass until the bill of sale had been delivered. It must be admitted that there is evidence in the record from which the jury might have drawn the opposite conclusion. Whatever might be the view of the court if the case were tried here *de novo*, there being evidence to sustain the verdict of the jury, it will not be disturbed.

The appellant further claims that the respondent could have taken possession of the property at any time subsequent to April 18, 1908, and that in fact he did so. These questions were properly submitted to the jury, and the jury, under the evidence, were justified in resolving them against the contention of the appellant.

The court, in the course of its instructions, told the jury that, if the saloon property was transferred to Sorensen & McDonald under a conditional sale contract, and the notes given for the purchase price were thereafter negotiated to the bank as collateral security, the title to the saloon became vested in Sorensen & McDonald. Error is sought to be

predicated upon the giving of this instruction. That the instruction is correct as an abstract statement of law can hardly be doubted. *Winton Motor Car Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71. The jury having found, upon the major question, that it was not the intention that the title should presently pass, the question whether or not the indorsement of the notes as collateral security would cause the title to vest in the vendee under the conditional sale contract does not seem to be material. If it were, the intention of the parties, as found by the jury, that the title should not pass until the delivery of the bill of sale, and that prior to its tender the property was destroyed by fire, the fact, if it be a fact, that the title had passed, would not change the rights of the parties. While the court might with propriety have refrained from instructing the jury upon this question, the giving of the instruction was not prejudicial error. It does not seem that the jury could have been misled thereby.

Other errors are claimed as to the instructions given and the refusal to give requests. Without reviewing these in detail, it may be said that the instructions given sufficiently covered the law of the case. The instructions requested and refused, so far as they contain correct statements of the law as applicable to the facts in this case, were covered by those given.

Finally, it is contended that the verdict is excessive. Two trials have taken place in the superior court. Upon the first trial, the jury returned a verdict for $4,050. A motion for a new trial being granted, the cause was tried a second time, and the jury returned a verdict for $5,895. This verdict, evidently, was for $4,500 and interest thereon. There is evidence in the record which would sustain a finding of value of $4,500, and no question has been raised relative to the allowing of interest.

The judgment will be affirmed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.