RAFAEL MATHEU, as Assignee, etc., Plaintiff and Appellee, *v.* RAUL COLÓN, Defendant and Appellant.

No. 6921. Argued December 20, 1935.—Decided January 16, 1936.

*Eduardo Urrutia Martorell* for appellant. *J. Pedro Miranda* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

Raúl Colón and the furniture concern, El Globo, of Succrs. of F. Ortega & Co., *S. en C.,* entered into a contract of conditional sale whereby the former bought, for the sum of $410, certain furniture from that firm. The buyer agreed to pay $70 down and $28.33 on the 12th day of each succeeding

month, until full payment of the stipulated price. On the same day that the contract of conditional sale was signed, Colón subscribed in favor of the seller twelve promissory notes for the sum of $28.33 each to become due two days after the maturity of each installment fixed in the conditional sale contract. The vendor firm assigned these promissory notes to the Royal Bank of Canada, which discounted them, and credited said firm with the proceeds thereof on account. Colón paid the intial installment of $70, and subsequently paid to said bank the first six promissory notes as they became due. The remaining six promissory notes were not paid, and they were returned by the Bank to the vendor firm, who took charge of them.

Rafael Matheu, as assignee of said firm, brought in a municipal court an action against Colón, based on the contract of conditional sale, and prayed that in accordance with the same the furniture sold be returned to him. The municipal court rendered judgment ordering the marshal to seize the furniture the object of the suit and to deliver it to Rafael Matheu. Feeling aggrieved by that judgment, Raúl Colón took an appeal therefrom to the District Court of San Juan. Manuel Portela, assignee of Matheu, was substituted as plaintiff. The district court also decided the case in favor of plaintiff. Thereupon the defendant took the present appeal, wherein he attributes the commission of two errors to the lower court. The first is that the judgment is against the weight of the evidence and contrary to law. In reality, the appellant, in this first assignment of error, consolidates three errors which we will presently discuss.

It is urged that the vendor firm by demanding and accepting the twelve promissory notes from the buyer, so altered the conditional sales contract that the same was novated, and hence that the seller could not exercise any right of action based on such contract, but should base his claim on the promissory notes which constitute a personal obliga-

tion. The lower court held that there was no such novation, as it had not been the intention of the parties to effect one, and cited the case of *Hernández* v. *Burgos,* 40 P.R.R. 440. The evidence shows that the promissory notes were issued in order that the vendor might negotiate them and convert then into cash. In accordance with section 1158 of the Civil Code, 1930 ed., "In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points."

In the instant case, there was no evidence to the effect that it had been the intention of the parties to novate the original contract, nor can such intention be inferred from the transaction made. It can not be asserted, either, that a new obligation and a new right of action were created by the execution of the promissory notes, for under the contract of conditional sale the seller always had the right to bring a personal action to enforce payment of the debt and, in default of such payment, to demand the return of the property. *Brockway Motor Truck Corporation* v. *Monclova,* 42 P.R.R. 849.

Appellant maintains that the acceptance of the promissory notes by the seller had the effect of paying the debt contracted and, hence, of extinguishing the contract of conditional sale. It is true that Diego Soto, manager of the seller, testified that the promissory notes represented the payment of said contract; but from the evidence offered it clearly appears that what this witness meant was that the promissory notes evidenced the undertaking on the part of the debtor to pay the debt. This is the only conclusion derived from the facts and the attendant circumstances of this case. Thus José R. Vicente, an employee of the bank, testified that, in discounting the promissory notes what really happened was that the money was advanced by the bank to F. Ortega & Co., *S. en C.,* who became bound to reimburse any sum

which Raúl Colón, the conditional buyer, failed to pay. How is it possible to construe this transaction otherwise? Can it be conceived that the parties took the trouble to enter into a contract of this kind and then on the same day and by the same transaction, accept promissory notes in payment of the stipulated price, with the understanding that such acceptance would have the effect of paying and extinguishing the obligation assumed under the contract of conditional sale? If such was the intention of the parties, why then undertake the useless task of executing a contract of conditional sale, when to carry out that intention, it would have been sufficient to issue the promissory notes and have them accepted by the conditional vendor? It is only logical to conclude, and it was so understood by the defendant debtor, as appears from his testimony, that the promissory notes were subscribed with the sole purpose of having them negotiated and converted into cash in order to obtain the value thereof.

In a note appearing in "American Law Reports," volume 13, page 1044, an analysis is made of the general doctrine regarding the effect of the issuance of promissory notes in conditional sales, and it is said:

"A contract of conditional sale reserving title in the seller is not ordinarily changed to one of absolute sale by the fact that the buyer gives a note whereby he promises unconditionally to pay the purchase price."

In the case of *Segrist* v. *Crabtree,* 131 U. S. 287, 289, the Supreme Court of the United States said:

"One of the principal questions arising upon the evidence was whether the two notes, payable respectively in September, 1881, and September, 1882, were received in actual payment, (in which event the remedy is upon the notes,) or only as evidence of the amount to be paid by Crabtree. In *Sheeby* v. *Mandeville,* 6 Cranch, 253, 264, Chief Justice Marshall said: 'That a note, without a special contract, would not, of itself, discharge the original cause of action, is not denied. But it is insisted that if, by express agreement, the note is received as payment, it satisfies the original contract, and the

party receiving it must take his remedy on it. This principle appears to be well settled. . . . Since, then, the plaintiff has not taken issue on the averment that the note was given and received in discharge of the account, but has demurred to the plea, that fact is admitted: and, being admitted, it bars the action for the goods.' In *Peter* v. *Beverley,* 10 Pet. 532, 568, it was said that the acceptance of a negotiable note for an antecedent debt will not extinguish such debt, unless the evidence is at least so clear and satisfactory as to leave no reasonable doubt that such was the intention of the parties. In *Layman* v. *Bank of the United States,* 12 How. 225, 243, it was held that the mere acceptance of the note by the creditor does not neces- sarily operate as satisfaction of the original debt, and whether or not there was an agreement at the time to receive it in satisfaction, or whether the circumstances attending the transation warranted such an inference, were properly questions for the jury. In *The Kimball,* 3 Wall. 37, 45, the court said that 'by the general commercial law, as well of England as of the United States, a promissory note does not discharge the debt for which it is given unless such be the express agreement of the parties; it only operates to extend until its maturity the period for the payment of the debt. The creditor may return the note when dishonored, and proceed upon the original debt. The acceptance of the note is considered as accompanied with the condi- tion of its payment.' These cases show the course of decision in this court.''

As we have already said, the evidence shows that the promissory notes were not accepted in payment of the obli- gation assumed under the contract of conditional sale, which remained in force between the parties after its execution. Appellant contends that when the conditional seller endorsed the promissory notes to the Royal Bank of Canada, he there- by waived the rights derived from said contract. Appellant bases this contention upon the theory that the conditional seller retains an absolute title and that any act on his part in the sense of treating the transaction as a personal debt is incompatible with the retention of said title by the vendor. In support of this doctrine the case of *Winton Motor Car- riage Co.* v. *Broadway Automobile Co.,* 65 Wash. 650, 118 P. 817, is cited. Assuming that the doctrine laid down in that case constitutes a correct interpretation of the law in the

State of Washington, said doctrine could not be applied in this jurisdiction, where we have held that the conditional seller does not retain an absolute title to the goods sold, but on the contrary the purchaser acquires such title subject to a defeasance. *Montalvo* v. *Valdivieso*, 38 P.R.R. 487; *De Gracia* v. *Guardiola*, 38 P.R.R. 513; *People* v. *Flores*, 48 P. R.R. 572; *Rubio* v. *Salvador R. Nin, Inc.*, 48 P.R.R. 952.

The applicable jurisprudence in Puerto Rico is that which prevails in the jurisdictions where it is held that the retention of the title by the vendor constitutes a security rather than an absolute title.

Our conditional sales statute, by its section 8, gives the seller the right to exercise both remedies, by providing: "If the proceeds of such sale are less than the amount due, to the conditional vendor, and the expenses of storage and sale, the conditional vendor, his successor or assign, shall have a right of action against the conditional vendee for the amount of such deficiency."

In *Johnson* v. *Martin Furniture Co.*, 139 Tenn. 580, 202 S. W. 916, the court said:

"The furniture company in the written sale contract retained title to the goods until paid for in full by the vendee, together with the right to take possession and dispose of same in accordance with the conditional sales statute. Johnson having made default as to certain installment payments, the furniture company sued and recovered a personal judgment thereon. Execution was returned *nulla bona*, and this replevin suit was later brought.

"Petitioner Johnson insists that the taking of the personal judgment was a conclusive election on the part of the seller which prevents a subsequent resort to replevin, and his counsel relies upon the doctrine set forth in cases. (Citations.)

"The reasoning of the courts which enforce this view is: That the vendor, upon breach by the vendee, has the option (*a*) to treat the contract as an agreement for goods sold and delivered and to sue for the price on that theory, or (*b*) to sue in tort for conversion, or in replevin for a specific recovery. If therefore the first remedy be resorted to, it rests upon the theory that after breach the title passed to the vendee, at the election of the plaintiff vendor. But,

if one of the second class of remedies be adopted, it rests upon the assumption that the title still remains in the plaintiff. These remedies, although alternative, are therefore held to be so far inconsistent that the bringing of a suit to obtain a personal judgment is a decisive election which precludes a later resort to replevin, or to trover for conversion. There is a sharp divergence in the decisions of this question, due perhaps to differences in fundamental conceptions as to the nature of the title retained in a conditional sale contract.

"In this State such retention of title by a vendor is a security for the personal obligation for the price, partaking of the nature of a lien upon the chattel. (Citations.)

"In this jurisdiction and several others, in contemplation of law, the personal obligation or debt is one thing, and the lien on given property securing the debt is another. The creditor may enforce both, and his election to pursue one does not exclude or waive the other as a remedy. Thus the lien of a mortgage, whether on chattels or realty, is not merged by taking of a judgment on the obligation *in personam* without satisfaction, and the lien may be thereafter foreclosed in an action, to satisfy the judgment. (Citations.)

"There is in this view of the basic right of the vendor no inconsistency in the two remedies or remedial rights. The action of replevin may be prosecuted to obtain possession, for the purpose of bringing the chattel to a sale under the terms of Thompson's Shannon's Code, section 3666. By section 3668, should the property fail to bring a sum sufficient to satisfy the seller's claim, the balance is a valid indebtedness against the purchaser."

In *Ratchford* v. *Cayuga County Gold Storage & W. Co.*, 217 N. Y. 565, 112 N. E. 447, 448, Judge Cardozo, speaking for the court, said:

"The appellant claims that by suing for the contract price and obtaining judgment therefor, the vendor forfeited the right to regain possession of the property, and made the title of the vendee absolute, though it had been conditional before.

"The question depends for its answer upon the law of election of remedies. Where two inconsistent remedies, proceeding upon irreconcilable claims of right, are open to a suitor, the choice of one bars the other. But, to have that effect, the remedies must be inconsistent. We find no inconsistency here. The contract says that title is to remain unchanged till the price is paid in cash. The

vendor had the right to receive the price, and brought an action to get it. The judgment preserves the obligation of the vendee's promise to make payment, but puts it in another form. There is no inconsistency between an attempt to get the money and a reservation of title if the attempt is not successful. In asserting title the vendor does not treat the contract as void in its inception. (Citations.) The contract is treated as subsisting, and enforced according to its terms.

"Our conclusion that the conditional vendor may sue for an installment of the price, and afterwards, if unable to obtain payment, retake the property, has support in many decisions. (Citations.)"

It is settled, then, that the two actions are not inconsistent, and that the exercise of one does not bar the other, where the obligation incurred has not been fully paid, as in the present case, in which six of the promissory notes have been returned unpaid to the conditional seller.

 The defendant and appellant maintains that the assignment of the claim by the conditional seller to Rafael Matheu was ineffectual and void, since the assignee acquired said claim with the sole intention and purpose of bringing a suit, and hence in contravention of the provisions of an act of the Legislature, approved March 11, 1909, the title of which says: "Providing for the organization of a committee of attorneys-at-law to examine and report upon the moral qualifications of applicants for admission to practice law before the courts of the Island of Porto Rico, defining certain duties of attorneys and counsellors-at-law, and for other purposes." The provisions claimed to have been violated read as follows:

"An attorney or counsellor, or any other person, shall not, directly, or indirectly, buy, or be in any manner interested in buying a bond, promissory note, bill of exchange, book-debt, or other thing in action, with the intent and for the purpose of bringing an action thereon; but this provision shall not prohibit the receipt of those things in action, in payment for property sold, or for services actually rendered, or for a debt antecedently contracted."

The plaintiff and appellee contends that the provisions which prohibit a third person not an attorney to buy a right

of action with the intention of bringing a suit is unconstitutional and void, as it is not covered by the title of the act. This contention is based on section 34 of our Organic Act which provides that no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed. It is urged that the title of said act, which we have transcribed above, does not cover the purchase of a right of action by a third person, and citation is made of *Spier* v. *Blake,* 120 Cal. 370, where the court said:

"A provision of the state constitution provides: 'Every act shall embrace but one subject, which shall be expressed in its title; but, if any subject shall be embraced in an act which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title.' (Const., art. IV, sec. 24.)

"Let us test the title of this act in the crucible furnished by the foregoing provision of the constitution. The legislature, in framing this title, was above all things candid. Upon its very face the law-making power challenged the sound policy of this provision of the constitution, and avowedly disregarding it, declared that the purpose of the act was the creation of a primary election law and 'other purposes.' Under the cloak of 'other purposes,' all and every conceivable kind of legislation could hide and thrive in the body of the act, and thus the constitutional provision be set at naught. In this state, when these words 'for other purposes' are found in the title of an act of the state legislature they accomplish nothing, and in reading the title our eyes are closed to them. We then have before us, tested by its title, an act dealing solely with general primary elections, and providing penalties for violating the law relating thereto. Any matters of legislation contained in the body of the act not bearing upon primary elections must go out; the constitutional provision quoted so declares. Weighing and measuring the legislation found in the act by this test, very many provisions have no place there. It would seem that the legislature, in using the words 'for other purposes' in the title, used those words advisedly, and in good faith lived up to them fully. For the legislation found in section after section of the act can find no justification in its

title, save under those words of boundless meaning, 'for other purposes.' "

It must be admitted that the provision objected to has been included in a law which, to judge by its title and its contents, was enacted exclusively for attorneys and applicants for admission to the practice of law. The prohibition referred to, in so far as made applicable to any person, seems to be outside the scope of the statute. We do not know of any law in Puerto Rico, with the exception of the one under consideration, which prohibits the purchase of a right of action by any person with the intention and purpose of bringingt a suit. We only know of section 1425 of the Civil Code, 1930 ed., which provides that when a credit in litigation is sold, the debtor shall be entitled to extinguish it by reimbursing the assignee for the price the latter paid for it, any court costs incurred by him, and interest on the price from the day on which the same was paid. Said section also provides that a credit shall be considered in litigation from the time of the filing of the answer to the complaint relating to the same. In the instant case, we are not concerned with the purchase of a credit sought to be recovered by a judicial action, but with the assignment of a contract which had not been the object of a suit. The Spanish text of the restrictive provision which we are construing speaks of the purchase of a *"cosa litigiosa"*; and the English text, of a "thing in action." Similar provisions are in force in the States of California and New York, but they refer exclusively to attorneys. The contention of plaintiff and appellee that the statute is void in so far as it prohibits the purchase of a right of action with the intention of bringing a suit by a third person not an attorney, does not seem to be incorrect; but we do not think it necessary to definitely pass upon this point, as in our judgment defendant is not in a position to attack an assignment which has not caused him any prejudice. His rights and obligations under the said contract remained unaffected.

The only alteration consists in a change of creditor. The assignment did not create any new obligation for said debtor. The fact that he now is indebted to Matheu instead of to the original seller does not mean that a new obligation exists. On the contrary, his debt owing to Matheu has its origin exclusively in the contract of conditional sale.

It is lastly urged that the lower court erred in admitting in evidence the public deed wherein the conditional seller ratified the assignment of the contract to Matheu. We have already decided that the debtor can not object to an assignment which in no way prejudices him. The ratification of such assignment as set forth in said deed can not prejudice him either.

The judgment appealed from must be affirmed.